UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NARGES LOTFIZADEH )
DEHKORDI, )
 )
       Plaintiff, )
 )  Civil Case No. 22-2470 (RJL)
   v. )
 )
RENA BITTER, et al., )
 )
       Defendants. )
 )

**MEMORANDUM OPINION**
August __30__, 2023 [Dkt. #8]

    Plaintiff, Narges Lotfizadeh Dehkordi ("plaintiff" or "Dehkordi"), brings this action against officials of the U.S. State Department, seeking to compel the Government to adjudicate her mother's IR-5 visa application. Plaintiff alleges that the State Department, which received her mother's case from U.S. Citizenship and Immigration Services in April 2022, has unreasonably delayed in processing the application. Defendants have moved to dismiss on several grounds, first under Federal Rule of Civil Procedure 12(b)(1) for lack of standing and alternatively under Rule 12(b)(6) for failure to state a claim under the Administrative Procedure Act or Mandamus Act. While plaintiff, in my judgment, has met the minimum requirements of constitutional standing, the delay in her mother's case attributable to the State Department is not unreasonable as a matter of law. As such, defendants' motion under Rule 12(b)(6) is **GRANTED**.

## BACKGROUND

Plaintiff, a U.S. citizen, first began the immigration process on her mother's behalf in December 2019. Mandamus Pet. & Compl. [Dkt. #1] ("Compl.") ¶¶ 1, 5. Consistent with applicable regulations, she filed a Form I-130, Petition for Alien Relative, for each of her parents, seeking to have them join her in the United States; mother Zinat Kianidehkordi and father Mohammadhasan Lotfizadehdehkordi are both Iranian nationals. *See* Dehkordi Decl. [Dkt. #10-1] ¶ 4; Repede Decl. [Dkt. #8-1] ¶ 4. Filing a Form I-130 "is the first step in helping an eligible relative apply to immigrate to the United States."[1] *See also* 8 C.F.R. §§ 204.1(a)(1), 204.2(f). This first step is managed exclusively by U.S. Citizenship and Immigration Services ("USCIS"), an agency within the Department of Homeland Security. USCIS "will generally approve [a] Form I-130" if the U.S. petitioner satisfactorily establishes the existence of a qualifying relationship between herself and the alien beneficiary. USCIS Information Page.

Once USCIS approves a Form I-130, its role in the process ends and the beneficiary's case is transferred to a separate Government entity, the State Department. "In this second stage of the process," the National Visa Center ("NVC"), an arm of the State Department, "receives the file from USCIS and imposes a waiting period until an application becomes 'current,' permitting review." *Manzoor v. U.S. Citizenship & Immigration Servs.*, 2022 WL 1316427, at *1 (D.D.C. May 3, 2022). "At that time, the

---

[1] U.S. Citizenship & Immigration Servs., "I-130, Petition for Alien Relative," https://perma.cc/MCK7-35UQ (last visited Aug. 30, 2023) (hereinafter "USCIS Information Page"). The Court may "take judicial notice of information posted on official government websites." *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 163 n.3 (D.D.C. 2021).

2

applicant must then submit additional information on a new Form DS-260." *Id.* (citing 22 C.F.R. § 42.67(a)). Once that information is submitted and accepted, the file becomes "[d]ocumentarily [c]omplete," and NVC can proceed to the last step of the process: an interview between the beneficiary and a U.S. consular officer.[2] *See also* 22 C.F.R. § 42.67(a)(1), (a)(3). "NVC cannot predict when [a] case will be scheduled for an interview" but "fills these appointments in a first-in, first-out manner." State Department Information Page. After the interview, "the consular officer must [either] issue the visa [or] refuse the visa." 22 C.F.R. § 42.81(a).

In plaintiff's case, both of her parents' Forms I-130 were approved by USCIS at the first step of the process, albeit at different times. Her father's Form I-130 was granted in September 2020 and his case progressed to NVC; the State Department issued his visa 22 months later. Dehkordi Decl. ¶¶ 5, 8. For plaintiff's mother, however, USCIS did not approve the Form I-130 until April 25, 2022, and NVC did not receive the approved petition until April 29. Repede Decl. ¶ 5. The following month, plaintiff and her mother were cleared to "begin the application process" with NVC, which required them to submit additional paperwork; they reportedly did so by June 28. Dehkordi Decl. ¶ 7. Less than eight weeks later, on August 18, 2022, plaintiff sued the three defendants in this case—all State Department officials—alleging unreasonable delay in adjudicating the visa. The combined complaint and mandamus petition seeks an order "[m]andating that Defendants process Plaintiff's mother's immigration case within fifteen (15) calendar days." Compl.

---

[2] U.S. State Dep't, "Immigrant Visa Process, Step 9: Submit Documents," https://perma.cc/8JSQ-L97Q (last visited Aug. 30, 2023) (hereinafter "State Department Information Page").

¶ 31.

After she filed suit, on October 26, 2022, NVC advised plaintiff that her mother's case had become "documentarily qualified," rendering her eligible for a consular interview. Dehkordi Decl. ¶ 9; Repede Decl. ¶ 6. Shortly thereafter, defendants moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim. *See generally* Mot. Dismiss [Dkt. #8]. The motion has been fully briefed and is ripe for decision. *See generally* Opp'n Mot. Dismiss [Dkt. #10] ("Opp'n"); Reply Supp. Mot. Dismiss [Dkt. #11] ("Reply").

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(1), the plaintiff "bears the burden of invoking the court's subject matter jurisdiction, including establishing the elements of standing." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). A plaintiff may do so with "material factual allegations in the complaint," which the court must treat as true, "granting plaintiff the benefit of all inferences that can be derived." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted). The court may also "properly consider … evidentiary material in the record," in addition to factual allegations, again affording plaintiff "the benefit of all reasonable inferences" to support subject-matter jurisdiction. *Feldman v. FDIC*, 879 F.3d 347, 351 (D.C. Cir. 2018).

The Federal Rules also require the plaintiff to adequately "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In resolving a motion to dismiss under Rule 12(b)(6), as under 12(b)(1), the court must accept "all well-pleaded factual allegations as true and draw all reasonable inferences … in plaintiff's favor." *Arpaio*, 797 F.3d at 19. The court will not, however, "assume the truth of legal conclusions" or "accept inferences

4

that are unsupported by the facts." *Id.* (internal quotation marks omitted). Dismissal is warranted if a plaintiff cannot "demonstrate that it is at least plausible" that defendants are liable for the misconduct alleged. *Dean v. U.S. Dep't of Homeland Sec.*, 2022 WL 2785967, at *6 (D.D.C. July 15, 2022).

## DISCUSSION

Plaintiff alleges that defendants in this case have unreasonably delayed in adjudicating her mother's visa application, in violation of both the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), and Mandamus Act, 28 U.S.C. § 1361. Defendants have moved to dismiss, under Rule 12(b)(1) and (b)(6), on two alternative grounds. First, they contend that plaintiff cannot establish Article III standing because the delay in her mother's case is not traceable to the State Department, as opposed to other actors. Second, defendants assert that even if this Court had subject-matter jurisdiction, the purported delay in this case is not unreasonable as a matter of law. Each of these theories is addressed in turn.

Defendants first move to dismiss on jurisdictional grounds, arguing that this Court lacks authority to hear plaintiff's claims because she has no standing to bring them. Defendants surmise that plaintiff's real grievance is with the time the Government has taken *collectively* to process her mother's visa, *see* Reply at 3—which is about 45 months as of the date of this decision. But as defendants point out, roughly 29 of those 45 months are not attributable to delay by the State Department or its officials, who are the only named defendants in this case. Accordingly, defendants argue, plaintiff cannot satisfy the second or third elements of Article III standing, since plaintiff's injury-in-fact relating to her

5

mother's visa is not causally connected to the State Department's conduct and will not be redressed by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Defendants' jurisdictional theory hits wide of the mark. While true that other actors, including USCIS, must shoulder some of the blame for the delay up to this point, the complaint adequately—and correctly—identifies the State Department as the party responsible for plaintiff's injury-in-fact *now*. *See* Compl. ¶¶ 1, 15.[3] Indeed, however limited the State Department's involvement in Zinat Kianidehkordi's case prior to suit— at the earliest, it had no obligation to act on her application until USCIS approved her Form I-130 in April 2022, *see Abbas*, 2021 WL 3856625, at *2—adjudication of the visa, and any further delay in that process, is now squarely with the State Department. And because an order by this Court directing the State Department to finish processing the visa would redress plaintiff's injury, she plainly satisfies the third element of constitutional standing as well. *See Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 6 n.1 (D.C. Cir. 2017) ("Causation and redressability typically overlap[.] ... [I]f a government action causes an injury, enjoining the action usually will redress that injury." (internal quotation marks and citation omitted)).

At bottom, defendants' standing argument is just a merits argument dressed up in a jurisdictional costume! What they really dispute is not the fact that the State Department— rather than USCIS or plaintiff—is currently the cause of plaintiff's legally cognizable

---

[3] In fact, State Department officials are the only viable defendants at this stage of her mother's case, since any claims against USCIS would have been mooted by its issuance of the Form I-130. *See Abbas v. U.S. Dep't of Homeland Sec.*, 2021 WL 3856625, at *2 (D.D.C. Aug. 29, 2021) ("[C]ourts routinely dismiss as moot mandamus actions requesting adjudication of an I-130 petition once it has been adjudicated.").

6

injury. Rather, they quarrel with what they view as plaintiff's attempt to hold the State Department responsible for a 45-month delay when it has had her mother's case for about 16 months. Fair enough (*see infra*), but that argument does not raise concerns of subject-matter jurisdiction. As such, I will focus on the merits of plaintiff's APA and mandamus claims, which ultimately do not fare better for plaintiff because the 16-month delay attributable to the State Department in this case is not unreasonable. How so?

The APA requires that a Government agency, "within a reasonable time, … shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). If the agency fails to do so, a court may "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). The standard by which a court reviews agency inaction under the APA is the same standard that applies to claims under the Mandamus Act, 28 U.S.C. § 1361. *See Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017).

In evaluating whether a delay in agency action is so unreasonable as to warrant judicial intervention, our Circuit has enumerated six factors for courts to consider:

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

7

> (6) the court need not find any impropriety lurking behind agency lassitude
> in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. FCC (TRAC)*, 750 F.2d 70, 80 (D.C. Cir. 1984) (internal quotation marks and citations omitted). At the motion to dismiss stage, the *TRAC* factors are "generally employed … to determine whether a plaintiff's 'complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay.'" *Sarlak v. Pompeo*, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) (quoting *Ghadami v. U.S. Dep't of Homeland Sec.*, 2020 WL 1308376, at *7 n.6 (D.D.C. Mar. 19, 2020)). Applying these factors here shows that plaintiff has failed to state a claim that the State Department has unreasonably delayed in processing her mother's visa application.

### I.     *TRAC* Factors 1 & 2

The first *TRAC* factor—often called the "most important," *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)—weighs heavily in defendants' favor, as does the second. These two factors are usually considered together "because they both analyze whether there is sufficient rhyme or reason to explain the Government's response time." *Mahmood v. U.S. Dep't of Homeland Sec.*, 2021 WL 5998385, at *7 (D.D.C. Dec. 20, 2021) (internal quotation marks omitted). Here, "[t]here is no congressional imposed timeline for processing [relative] visa applications." *Brzezinski v. U.S. Dep't of Homeland Sec.*, 2021 WL 41914958, at *4 (D.D.C. Sept. 15, 2021). While plaintiff insists that the preamble to an immigration benefits law provides "180 days" as the relevant yardstick, Opp'n at 14 (quoting 8 U.S.C. § 1571(b)), that language is precatory, nonbinding, and, at any rate, likely irrelevant to the State Department's processing of visa applications, which

is a different kettle of fish from immigration benefits. *See Mohammad v. Blinken*, 548 F. Supp. 3d 159, 167 (D.D.C. 2021) (finding Section 1571(b) "nonbinding"); *Arab v. Blinken*, 600 F. Supp. 3d 59, 69–70 (D.D.C. 2022) (expressing skepticism that Section 1571(b) applies to visa applications and collecting cases).

Thus, with no indication that Congress departed from the "wide discretion" it ordinarily gives agencies "in the area of immigration processing," *Skalka*, 246 F. Supp. 3d. at 153–54, the Court must turn to caselaw for guidance. "No bright lines have been drawn in this context," but courts in our district "generally f[i]nd that immigration delays ... between three to five years are often not unreasonable." *Arab*, 600 F. Supp. 3d at 70. Indeed, on a motion to dismiss, delays as long as 42 months, *Zaman v. U.S. Dep't of Homeland Sec.*, 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021); 30 months, *Arab*, 600 F. Supp. 3d at 69; and 29 months, *Zandieh v. Pompeo*, 2020 WL 4346915, at *6 (D.D.C. July 29, 2020), have been endorsed under the first and second *TRAC* factors. *See also Mirbaha v. Pompeo*, 513 F. Supp. 3d 179, 186 (D.D.C. 2021) (27 months); *Mahmood*, 2021 WL 5998385, at *7–8 (25 months); *Ghadami*, 2020 WL 1308376, at *8 (same); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 94 (D.D.C. 2020) (same). Against these timeframes, the State Department's delay in this case—at most, roughly 16 months—is comparatively small potatoes.[4]

---

[4] Neither the parties nor the courts seem to agree on how to calculate delay in immigration cases like this one. Defendants submit that the delay should be quantified as the time between April 29, 2022, when the State Department received Zinat Kianidehkordi's file from USCIS, and August 18, 2022, when plaintiff filed her complaint—approximately 16 weeks. *See* Reply at 3 & n.2. By contrast, while taking no position on the appropriate start date, plaintiff—and most courts—"focus on the delay up to the issuance of the opinion." *Brzezinski*, 2021 WL 41914958, at *4 n.3. Still others have suggested the clock starts running

9

## II.   *TRAC* Factor 4

The fourth *TRAC* factor tips in defendants' favor, too.  That factor requires courts to consider the extent to which an order compelling agency action will affect other "agency activities of a higher or competing priority."  *TRAC*, 750 F.2d at 80.  If an "order putting [the petitioner] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain," a court may deny relief under the fourth *TRAC* factor alone.  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (internal quotation marks omitted; alterations in original).

So it is here.  Granting plaintiff the relief she seeks would simply move her mother's application ahead of others awaiting similar decisions, "when the only difference between them is that plaintiff has brought a federal lawsuit."  *Verma v. USCIS*, 2020 WL 7495286, at *9 (D.D.C. Dec. 18, 2020).  Judicial restraint is even more appropriate than in the typical pre-pandemic case because of the "unusual and extreme challenges for Defendants, on top of the typical bureaucratic hold ups," created by COVID-19, *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021)—which continues to severely impact State Department operations.[5]  For her part, plaintiff swears she is not trying to jump any "queue" but instead

---

on the date of "the last Government action," which, in this case, might be defined as October 26, 2022, when NVC informed plaintiff that her mother's case was documentarily complete.  *Mahmood*, 2021 WL 5998385, at *7.

The Court need not enter this debate.  However the delay is calculated here—be it 16 weeks (April to August 2022), 10 months (October 2022 to present), 16 months (April 2022 to present), or something else (e.g., the 14 months from June 2022, when plaintiff and her mother finished submitting their paperwork to the State Department, to present)—it falls far short of the delay that courts have found reasonable, much less *un*reasonable, under the first two *TRAC* factors.

[5] *See* U.S. State Dep't, "National Visa Center (NVC) Immigrant Visa Backlog Report," https://perma.cc/35ZT-AW5F (last updated Aug. 2023)

10

"is claiming that others skipped ahead in line of her mother, as evidenced by the different pace of her father's case"; thus, she "merely ask[s] that the Government engage in normal processing of the visa." Opp'n at 15–16. But the "different pace" of her father's application does not suggest that the State Department is adjudicating visas out of order, as plaintiff claims; it simply reflects the reality that USCIS (a separate Government entity) transferred her father's case to NVC a full 19 months before her mother's. Plaintiff's attempt to "make apple juice with oranges" by eliding the separate roles of USCIS and the State Department does not withstand scrutiny. *Mohammad*, 548 F. Supp. 3d at 166.

### III.  *TRAC* Factors 3 & 5

By contrast, *TRAC* factors three and five—which look to "the interests prejudiced by delay," including how it impacts "human health and welfare"—favor plaintiff. *TRAC*, 750 F.2d at 80. She claims that the delay in this case has caused her and her family serious financial, medical, and emotional hardship. Among other challenges, plaintiff's father—now in the U.S. and separated from his wife—is undergoing chemotherapy for two types of cancer, while plaintiff's mother—alone in Iran—recently had hip-replacement surgery and suffers from back issues, diabetes, hypertension, and depression for which medication is hard to obtain. Dehkordi Decl. ¶¶ 11–13, 17, 20. On top of that, current levels of unrest in Iran have given plaintiff reason to fear for her mother's safety, owing to both her gender and connection to political dissidents. *Id.* ¶¶ 16–18. Meanwhile, plaintiff and her teenage son suffer anxiety from the family's separation, affecting their performances at work and school. *Id.* ¶¶ 14–15. In similar cases, these kinds of circumstances have been sufficient to carry the third and fifth *TRAC* factors. *See Arab*, 600 F. Supp. 3d at 71 (collecting cases).

11

Nevertheless, even a solid showing on these factors is "not enough to overcome the other factors that weigh strongly" for defendants. *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021). And, though sympathetic to plaintiff's difficulties, "the Court is also mindful that many others face similarly difficult circumstances as they await adjudication of their visa applications," including applicants that have waited even longer than plaintiff's mother. *Mohammad*, 548 F. Supp. 3d at 166 (internal quotation marks omitted). Moving this case to the top of the proverbial pile would only push similarly deserving applicants further back in line.

### IV. *TRAC* Factor 6

Finally, the sixth factor—whether "impropriety lurk[s] behind agency lassitude," *TRAC*, 750 F.2d at 80—plays no role here. Plaintiff "does not allege bad faith" by the State Department, Opp'n at 17, and the lack of such plausible allegations do not create a win for defendants. "This factor is thus neutral and does not alter the Court's analysis." *Palakuru*, 521 F. Supp. 3d at 53.

\*    \*    \*

Taking the *TRAC* factors together, the Court finds that plaintiff has not stated a claim under the APA or Mandamus Act for unreasonable delay. As one final arrow in her quiver, plaintiff insists that evaluation of these factors is premature on a motion to dismiss because they are "necessarily fact dependent." Opp'n at 11 (quoting *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022)). She suggests that "more specific evidence" about "the cause of the delay," as well as "the existence of a queue, the plaintiff's place in the queue, or procedures for determining the order of adjudications," is necessary

before her claims can be resolved. *Id.* at 11–12, 16. But for one thing, the State Department website—which advises that visa interview spots are filled "on a first-in, first-out basis," State Department Information Page—convincingly "shows that the existence of a queue is a fact and not fiction." *Arab*, 600 F. Supp. 3d at 71. Nor are any of the other determinative facts of this case up for debate, including the relevant dates related to Zinat Kianidehkordi's case, the Government's acknowledged visa backlog due to pandemic-related challenges, or the impact of the delay on plaintiff and her family.

More to the point, plaintiff does not explain how "more specific evidence" on any of the facts alleged in this case would make a delay of 16 months on the tail end of a global pandemic "unreasonable." At any rate, courts in our district routinely apply the *TRAC* factors on a motion to dismiss. *See Mokkapati v. Mayorkas*, 2022 WL 2817840, at *4 n.4 (D.D.C. July 19, 2022) (collecting cases). "As in those cases, this record contains enough facts" to reject plaintiff's claims now. *Sarlak*, 2020 WL 3082018, at *5.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss [Dkt. #8] is **GRANTED**. An order consistent with this Memorandum Opinion will issue on this date.

RICHARD J. LEON
United States District Judge